## Henry Kellogg vs. The City of New Britain.

Hartford Dist., May T., 1892. Andrews, C. J., Carpenter, Seymour, Torrance and J. M. Hall, Js.

An act passed in 1872 amending the charter of the city of New Britain, provided that its common council, whenever the sewerage of the city should in their opinion require it, might take and appropriate in such manner as they should deem expedient, any stream running in or through the city; the act providing for an assessment of damages to owners upon the stream, and concluding as follows:—"and said damages being paid or deposited as before provided, said city may go on to complete said public improvement, and do all acts necessary or convenient for that purpose without further liability in the premises." The common council took and converted into a sewer a stream running through the city, but did not have assessed, and did not pay, any damages to the plaintiff, through whose lands at some distance below the city the stream ran, and was rendered noxious and offensive by its pollution. Held in a suit for damages against the city—

1. That the legislature did not intend by the act, even if it had the power, to authorize the city to take the stream until it had paid all the damages it might thereby do to any individual.

2. That the city, not having made such payment, was liable for all damages it might have caused, as much as if the act had not been passed.

The city in its defense, without denying any of the allegations of the complaint, alleged that the use which it was making of the stream was reasonable and proper and consistent with the rights of the plaintiff. Held to be demurrable, as stating only a conclusion of law, or of law and facts so blended that they could not be separated. The defense should have shown just what the city had done, so that the plaintiff might admit or deny and the jury be able to determine whether that

was in fact what had been done, and so that the court might see whether such use of the stream was reasonable and proper and consistent with the rights of the plaintiff.

The act of 1872 and the proceedings under it were matters in avoidance and were not admissible in evidence upon any issue formed by a general denial. An affirmative defense must always be pleaded.

[Argued May 6th—decided September 12th, 1892.]

ACTION to recover damages for the pollution by the defendant city of a stream of water running through the city and thence to and through the lands of the plaintiff, the city having made the stream a sewer; brought to the Superior Court of Hartford County.

The complaint averred that the plaintiff was the owner of certain lands in Newington through which a stream of water known as Piper's Brook has always flowed; that the city of New Britain had for a long time caused to flow into the waters of the brook above the lands of the plaintiff large quantities of acids, impure matter, sewage and other noxious and impure substances, to his great damage, etc., etc.

To this complaint the defendant pleaded two defenses; namely, the general issue, and a second defense which was as follows:—

1. In 1872, and for a long time prior thereto, a stream of water flowed into the city of New Britain from the west, and running in a generally easterly direction through said city it passed beyond the limits thereof and flowed northeasterly through the town of Newington, and thence to the city of Hartford, where it emptied into the Connecticut River. Said stream is the same that is spoken of in the complaint as Piper's Brook.

2. At said time, to wit, in 1872 and long prior thereto, said stream flowed under and near several large factories, shops, dwellings and other buildings in said city, and was largely and extensively used for carrying off the acids, dye stuffs, sewage, waste and filth of said factories and other buildings, and that the waters thereof were then and for a long time prior thereto had been, impure and totally unfit for domestic purposes.

3. From outside the limits of said city said stream flowed through a sparsely settled district, into and through the town of Newington, the central part of which is about four and one half miles from the limits of said city.

4. In 1872 it became necessary for said city to provide for a system of public sewerage for the inhabitants thereof, and in addition to the powers conferred upon it by its original charter, the legislature of this state in said year authorized the common council of said city, whenever in its opinion the public health or sewerage should require such action, to take, occupy and appropriate, in such manner as it from time to time deemed expedient, any stream or part of a stream, natural or artificial, running in or through said city, and to straighten, deepen or lower the same, or lower or remove any or all walls, dams or other obstructions to the free and healthy flow of such stream or part of a stream, and to do other things in the premises; all of which more fully appears by the provisions of said act.

5. Pursuant to the provisions of said act said city, through its common council, took proceedings in 1875 and 1876 to occupy, straighten and appropriate said stream and to remove and lower dams and other obstructions thereon, and as part of its system of sewerage it built a large brick sewer running from the western part of said city to or near a point where said stream left the city limits and into said sewer it ran said stream bodily, so that in its course through the city said stream was mainly conducted through said sewer.

6. Said action on the part of said city was taken in the utmost good faith, in a proper manner, and in the exercise of proper and reasonable care, under the lawful authority of this state, for a public purpose and under the necessities of the public health and sewerage of said city, doing no unnecessary damage to the plaintiff, and without protest or objection from him, and at a cost to said city of upwards of one hundred thousand dollars.

7. The streams and watercourses of this state have from time immemorial been used as natural highways to carry off

the sewage of cities and towns, and are now so used by all
the municipalities in this state having a system of public
sewerage, and no system of disposing of the sewage of such
municipalities without the use of such rivers and water-
courses has been found practicable, and the city of New
Britain has no other practicable and reasonable method of pub-
lic sewerage without using Piper's Brook in substantially the
same way it is now using it under the authority aforesaid;
and since 1876 it has continued to enlarge its sewerage sys-
tem and expend large sums of money with the knowledge
of the plaintiff and without protest from him; and to enjoin
the defendant from the use of Piper's Brook as asked in
the complaint would entail upon said city and the inhabi-
tants thereof irreparable loss and damage, both in property
and in the public health of said city.

8. Said city has not otherwise defiled or injured said
stream than in the manner and under the authority afore-
said.

To this defense the plaintiff demurred. The court sus-
tained the demurrer, and the defendant amended his defense
as follows:—

" Piper's Brook has its source just outside the city of New
Britain and has always flowed through the central portion
thereof. The city of New Britain is a manufacturing cen-
ter, and for more than fifty years it and the municipalities
preceding it and of which it is the legal successor, have used
said brook for manufacturing purposes, and the waters
thereof had more than twenty years ago become unsuitable
for domestic purposes. Said brook was so located that it
naturally received the drainage of said city, and before said
city did any of the acts complained of in the complaint, as
the population and manufacturing industries of said city
had increased, had become the natural receptacle of the
drainage and wash of the streets and numerous factories,
public buildings and private residences of said city. Said
stream flows through a sparsely settled portion of the coun-
try from New Britain to its junction with Park River in
the city of Hartford, and the lands through which it flows

are not specially valuable but are in the main pasture lands. Before any of the acts complained of there was not a mill or manufacturing establishment of any kind on said stream below New Britain, and as a source of water power said stream was not sufficient or reliable either at New Britain or any point below it. The use which the city of New Britain has made of said stream is a natural, reasonable and proper one, and is not inconsistent with the rights of the plaintiff."

The act of 1872 (7 Private Acts, 336,) is as follows:—
" Sect. 1. The common council of said city are hereby authorized, whenever in their opinion the public health or sewerage shall require such action, to take, occupy and appropriate in such manner as they shall from time to time deem expedient, any stream or part of a stream, natural or artificial, running in or through said city, and to straighten, deepen or lower the same, or lower or remove any or all walls, dams or other obstructions to the free and healthy flow of such stream or part of stream, or enlarge or cause to be enlarged or lowered any or all culverts which at any season of the year cause the accumulation of stagnant water or interrupt in any manner the free and healthy flow of any part of such stream.

" Sect. 2. Whenever said common council shall take action under the foregoing power they shall appoint a committee to prepare a descriptive survey of the improvement contemplated, with a careful estimate of the cost of completing the same, and to agree with the parties interested as to damages and special benefits on account of such improvement ; and the report of such survey and estimate having been accepted and recorded, and such agreement having been ratified and the sum agreed upon as damages having been paid to the parties entitled thereto or deposited to their credit in the city treasury, said city may go on to the completion of said improvements, and do all acts necessary or convenient for that purpose without further liability.

" Sect. 3. But if said common council shall be unable to agree with the parties interested as to damages or benefits to

be assessed on account of such improvement, any judge of the Superior Court or of the Supreme Court of Errors may, on application of said city, after causing such notice of the pendency of such application as he shall deem just and reasonable, appoint three judicious and disinterested free-holders of the county of Hartford to estimate the damages and benefits resulting from said improvement, and said commit-tee, having been duly sworn and having given notice of the time and place of their meeting for the purpose aforesaid by publishing the same not less than twice in a newspaper pub-lished in said city, shall meet at the time and place designated, and having heard all parties in interest who shall appear be-fore them, shall determine what parties will be damaged by said improvement in excess of special benefits, and the amount thereof; also what parties owning or interested in lands, easements or franchises within a reasonable distance of said improvement will receive special benefit over all damages and the amount thereof; and also what parties if any will receive an equal amount of damage and benefit. And thereupon said committee shall report in writing to the said judge, who may confirm, correct or set aside said report as he may deem just, in which latter case said committee, or a new one to be then appointed by said judge, shall proceed as before, and said report being finally accepted by said judge shall be recorded by the clerk of the Superior Court for Hartford County, and the award of damages and benefits therein contained shall be final between the parties. All papers connected with the case, by whomsoever held, shall then be delivered to the clerk of the city of New Britain, who shall keep the same on file for public inspection, and said damages being paid or deposited as before provided, said city may go on to complete said public improvement and do all acts necessary or convenient for that purpose without further liability in the premises."

The plaintiff demurred to the defense as amended and that demurrer was sustained by the court. There was then a trial to the jury before *Fenn, J.*, upon the issue formed by the first defense.

Upon the trial the defendant offered in mitigation of damages evidence to prove that in 1872 the city was authorized by the legislature of this state to take, occupy and appropriate the stream for sewer purposes. This evidence was objected to on the ground that only compensatory damages were claimed. The court sustained the objection. The same evidence was offered as a justification for the acts of the defendant, and was ruled out on objection. After the court had completed his charge to the jury, the counsel for the defendant requested the judge to instruct them that the present suit would not be a bar to suits that might be brought for any damages done subsequent to the service of the present complaint. The judge declined to entertain the request at that time. The defendant, as a justification of all the acts complained of, offered evidence to prove that it followed all the provisions of the act of 1872, including the necessary steps for the condemnation of the rights of the plaintiff in the stream. This evidence was objected to and the court sustained the objection.

The jury returned a verdict for the plaintiff, and the defendant appealed.

*F. L. Hungerford*, for the appellant.

*C. E. Perkins*, for the appellee.

ANDREWS, C. J. The questions of law arising on the record which the defendant has presented on its brief for review, are these:—

1. Did the act of 1872 amending the charter of the city of New Britain intend to confer upon the city the right to use Piper's Brook for sewer purposes?

2. If it did so intend could the legislature lawfully confer such power?

3. Is it sufficiently alleged in the second defense that the action of the defendant in using the stream for sewer purposes was taken under that act?

4. Was the allegation in the amended answer that the use

which the city was making of Piper's Brook was a natural, reasonable and proper one, and not inconsistent with the rights of the plaintiff, demurrable?

5. Should the act of 1872, and the proceedings taken under it by virtue of which it was claimed the plaintiff's rights in the stream were condemned, have been received in evidence, either as a defense or in mitigation of damages?

6. Was the request of the defendant that the jury should be told that the plaintiff would have a right of action against the defendant for damages accruing subsequent to the date of the complaint, properly refused?

We pass the first two of these questions without discussion. A decision upon either of them is not necessary for the disposal of the case. We assume for the purposes of the present case—and only for the purposes of the case— that both are to be answered in the affirmative.

However extensive the authority of the legislature may be, it is quite clear that the legislature of 1872 did not intend by the act of that year to grant to the city of New Britain the right to take Piper's Brook or any other stream for a sewer until the city should first pay all the damages it might thereby do to any individual. The constitutional prohibition against taking private property for public use without making just compensation therefor, was doubtless in the legislative mind. Careful provisions are contained in the act to this end. First, by agreement with the persons who may be damaged. And in cases where an agreement cannot be reached, the method by which to ascertain by judicial process the damages to any person is prescribed. The act makes the payment of all damages a condition precedent to the rights of the city to take any stream for a sewer. The language is clear:—" Said damages being paid or deposited in the city treasury, the city may go on and complete said public improvement, and do all acts necessary and convenient for that purpose, without further liability in the premises." Failing to make such payment the city continues liable for any and all damages it may have caused as if said act had not been passed.

It nowhere appears in the defense that the city had ever tried to agree with the plaintiff upon his damages, or had ever taken any steps to ascertain, by the method pointed out in the act or in any other way, what his damages were, or that it had ever paid to him his damages. We think then that it is not sufficiently alleged in the defense that the action of the defendant in using the stream for sewer purposes was taken under said act.

The second defense was in the nature of a special plea in bar. It undertook to be an answer to the whole complaint. It did not deny any of the allegations in the complaint, but purported to set up other facts by way of avoidance of the legal effect of the acts charged therein. As amended it was demurrable because it did not state facts but conclusions. It did not set forth what use the city was making of Piper's Brook, nor in what manner. It did not state any issuable facts; that is, facts which could be tried. To allege that the use which the city was making of the stream was reasonable, or natural, or proper and consistent with the rights of the plaintiff, without stating what that use was, or the manner of the use, was but the statement of a conclusion—a conclusion of law, or of law and fact so blended that they cannot be separated.

Matter of law is never to be pleaded in such way. This defense, in order to have withstood the test of a demurrer, should have set out just what the city had done with Piper's Brook, what use it was making of that stream, and its manner, so that the plaintiff might admit or deny, and that the jury might determine whether such use, and only such use, and in such manner, was in fact what had been done; and that the court might see whether such use was natural or reasonable or proper and not inconsistent with the rights of the plaintiff. Every special plea must contain issuable matter, for the plain reason that it would not otherwise be triable. On the same principle every special plea in which matter of fact and matter of law are so blended that they cannot be separated is ill. If therefore in trespass for false imprisonment the defendant pleads that he arrested the

plaintiff by lawful authority, without showing what the authority was, the plea is bad as not being issuable. For a traverse of the plea would put in issue all matters of law as well as of fact which might conduce to show the defendant's authority; whereas matter of law is never issuable. The plea in such case ought to state the defendant's authority specially—not only that its legal sufficiency may be judged of by the court from the record, but also that the plaintiff may be enabled to traverse, distinctly, the matter of fact alleged in it. So also when the defendant, being bound by a condition to produce the plaintiff a sufficient discharge of a certain demand, pleaded that he had produced " a sufficient discharge," without stating its tenor or contents, the plea was held ill on the principles above stated. Gould's Pleading, chap. 6, sects. 96, 97; Pomeroy's Remedies, § 517; *Chesbro* v. *Babcock*, 59 Conn., 213.

The trial to the jury was upon the issue formed by the general denial. For the purposes of that trial the record did not contain the second defense or its amendments at all. The act of 1872 and the proceedings under it were not admissible in evidence upon that issue. That act and such proceedings would have been matter in avoidance. Such evidence is forbidden by section four of the practice act, (Gen. Statutes, § 875,) which provides that an affirmative defense must always be pleaded. *Rice* v. *Grange*, 131 N. York, 149.

Nor was there any error committed by the court in declining to consider the request for instruction to the jury. It was clearly within the discretion of the court to decline to notice that request at the time it was made. Besides, the same instruction had in substance been already given to the jury.

There is no error in the judgment appealed from.

In this opinion the other judges concurred.